# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT D. MOUSAW,<br><br>                Plaintiff,<br><br>     v.<br><br>TETON OUTFITTERS, LLC, an Idaho limited liability company; and TETON OUTFITTERS, LLC, d/b/a/ KLIM; and KLIM AGGRESSIVE SLED WEAR, an assumed business name of Teton Outfitters, LLC, and POLARIS INDUSTRIES, INC., a Minnesota corporation,<br><br>                Defendants. | Case No. 4:14-CV-00508-EJL-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

       Pending before the Court in the above entitled matter is Defendants' Motion for Summary Judgment (Dkt. 17). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.[1]

---

[1] The Court notes that Plaintiff's briefing was difficult to follow when it cited to headnotes instead of pages of an opinion. As a practice point, headnotes for a Lexis citation are not the same as the headnotes for a Westlaw citation. This Court relies on Westlaw for its legal research so the Lexis headnote numbers made it difficult for the Court to find the quotation from the case. The proper format for citing to a quotation from a case is by the page number (not headnote) and this practice should be followed in future pleadings. Additionally, the Plaintiff cited in his brief to a case Overview. Overviews (used by Lexis) or case Synopsis (used by Westlaw) are also not the same for each service and like headnotes authored by each publishing service they are *not* law of the case and should not be cited, as they have no precedential or persuasive value.

**MEMORANDUM DECISION AND ORDER- 1**

Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## BACKGROUND

Plaintiff Robert D. Mousaw starting working for Defendant Klim[2] as a Regional Sales Representative in 2009. Klim is owned by Defendant Teton Outfitters, LLC and is in the business of developing, manufacturing and selling motor sports gear and equipment. In December of 2012, Polaris Industries, Inc. purchased Teton Outfitters. All of Mousaw's payroll checks were from Klim. Plaintiff has never received a paycheck from Polaris nor been identified as a Polaris employee.

Mousaw was hired by Klim's President, Justin Summers, and was 61 years old at the time of his hiring. Mousaw signed an acknowledgment of his receipt of Klim's employee handbook. (Dkt. 17-2, p. 26). The Employee Handbook sets forth unambiguously that employment at Klim is employment at will. (Dkt. 17-4, p. 31).

In June of 2010, Summers asked Mousaw if he would be interested in switching his focus to selling Klim's motorcycle brand. Mousaw agreed and served as Southeast Regional Manager until December 2010.

---

[2]Klim is not a legal entity registered in Idaho. Klim Aggressive Sled Wear is an assumed business name for Teton Outfitters, LLC. When the Court refers to "Klim" in this Order, it is referring collectively to Defendants Klim, Klim Aggressive Sled Wear and Teton Outfitters, LLC.

**MEMORANDUM DECISION AND ORDER- 2**

On December 1, 2010, Summers hired Mousaw as Klim's first full-time Outside Sales Representative. It is undisputed that Summers and the Director of Sales, Randy George, were a bit apprehensive about how long Mousaw intended to work before retiring, but Summers hired Mousaw for the position at an age of nearly 63 after Mousaw indicated to George he intended to work for approximately five more years. Mousaw's territory included Southeast Idaho, Utah and Western Wyoming and he was responsible for approximately 30 customer accounts.

Summers maintains that Klim wanted a sales representative supporting this territory to live in Utah as it was the location of most of the important customers in the defined territory. Management was aware Mousaw lived in Ammon, Idaho, but commuted to Utah where he rented an apartment in order to better serve Utah customers. Plaintiff admits he sought reimbursement for his Utah accommodations, but Klim did not reimburse him for this expense, but did agree to reimburse him for the cost of his internet service in Utah.

In February 2013, Klim hired Brett Nicholas as its Vice President of Sales and Marketing to create a more global and streamlined sales force as well as to add more outside salespeople as the business grew. The use of technology was important in order for Klim to track its sales activities. Salespeople were expected to use the company technologies such as the Business to Business (B2B) program and NetSuite.

**MEMORANDUM DECISION AND ORDER- 3**

In April of 2013, Plaintiff received a performance review from his sales manager, Will Bozung. Bozung noted Plaintiff's strength in customer relations but also noted an issue regarding a lack of courtesy by Mousaw with his co-workers and asked Plaintiff to be more tactful (less aggressive) in his conversations with Klim employees. Bozung also wanted Mousaw to be more positive towards Klim. Finally, the review noted the need for Mousaw to utilize the NetSuite software required of the position.

In August or September 2013, there was a sales meeting to discuss the global strategy and systems. At this meeting Mousaw indicated he was not going to use the company's technology or use his computer when meeting with clients. Mousaw complained that the B2B system was not used by his clients for ordering as it was not an efficient way to order, pay for and track goods. Nicholas found Mousaw's statements and attitude at the meeting to be negative and bordering on insubordination. Nicholas discussed the events at the meeting with Summers who was also concerned with Mousaw's behavior. Mousaw claims he was just responding to questions for feedback on the systems and he gave honest answers about why clients did not use B2B. Plaintiff does not deny he didn't encourage customers to use B2B and he that he did not use the software provided to track orders and allow Klim to track orders. (Mousaw Depo., 73:2-19, Dkt. 17-4, p.11.)

In November 2013, Mousaw had a performance review from his sales manager Dustin Pancheri. Pancheri noted Mousaw's positive drive and relationships with clients. The review also noted that Mousaw can be abrasive while interacting with Klim

**MEMORANDUM DECISION AND ORDER- 4**

personnel and that Mousaw had said some things that were not reflective of the Klim message. Mousaw was instructed that accurate communications were important and misleading or inaccurate information cannot happen. This review also indicated Mousaw was behind on some goals. Mousaw responded that this was due to a lack of product.  The review also notes Mousaw was resisting change and not willing to adapt to certain technology requirements.  Pancheri felt Mousaw's reaction to the areas he wanted Mousaw to work on was not positive.

It is undisputed that Mousaw grew the territory sales, was familiar with the industry and was very well liked by his customers.  It is also undisputed that his territory's gross sales increased from approximately $500,000 when first employed to over $1.6 million at time of his termination.

In 2013, Nicholas was realigning its sales structure to support its global strategy and gain market share. The realignment led to certain layoffs, the hiring of new salespeople, and moving other employees into newly restructured territories. This included two new salespersons (both age 64) being hired to manage a newly created territory for Tennessee, Georgia, North Carolina and Kentucky and another new territory for Colorado and New Mexico.

Plaintiff's former territory was dissolved. Instead, the company had a Utah territory and planned to have the Sales Manager Pancheri service the Idaho and Wyoming clients that Mousaw had been servicing. It was determined by Nicholas and Summers that Mousaw did not fit the company's plans to reorganize and use more technology to build a

**MEMORANDUM DECISION AND ORDER- 5**

North America sales structure. Summers states in his affidavit that he had lost confidence in Plaintiff's ability to represent Klim within the new structure and decided to terminate his employment. Justin Summers Aff., Dkt. 17-7, ¶ 14. Mousaw's territory was dissolved with Pancheri agreeing to service Mousaw's customers.

On December 19, 2013, Klim's Human Resource Director Sandi Landon along with Pancheri and Klim's National Sales Manager Paul Hepworth met with Mousaw and advised him that he was being terminated due to the restructuring. It is disputed by the parties who decided the separation should be described as a "retirement" to other employees and customers. There is no evidence Plaintiff objected to Klim describing Mousaw's leaving as a retirement. Plaintiff claims (and it is not disputed by Klim) that he did not want to retire and intended to continue working. Plaintiff was 66 when he was terminated.

Plaintiff acknowledges that no discriminatory or inappropriate comments were ever made towards him or about him by managers or other workers at Klim. Plaintiff also acknowledges he was not advised at the meeting on December 19, 2013, that his termination was due to or because of his age.

In January of 2014, it was determined Pancheri did not have sufficient time to serve all customers in Mousaw's former territory. Klim decided to create a new Utah territory and hired a new sales representative who lived in Utah for the Utah territory, Brandon Archibald. Archibald was 24 years old when he was hired. Archibald has a

**MEMORANDUM DECISION AND ORDER- 6**

degree in Business Management but did not possess prior marketing in outdoor clothing unlike Mousaw who had many years of marketing in the motorcycle and snowmobile industry.

Plaintiff has presented evidence that Archibald did handle some sales in Idaho and Wyoming in early 2014. Klim does not dispute that Archibald had some accounts in Idaho based upon their physical proximity to his Utah clients and that he may have processed some Wyoming sales orders as well. It is also undisputed that Archibald took over a majority of Mousaw's Utah clients, but he also generated new Utah customers who were not previously customers of Klim.

On November 25, 2014, Plaintiff filed his Complaint alleging he was wrongfully terminated due to his age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et. seq. Plaintiff also states Defendants deprived Plaintiff of both substantive and procedural due process in violation of the Fifth and Fourteenth Amendment to the U.S. Constitution as enforced by 42 U.S.C. § 1983. Defendants deny Plaintiff was terminated due to his age. Defendants filed a motion for summary judgment on October 29, 2015.

## STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the

**MEMORANDUM DECISION AND ORDER- 7**

summary judgment "is to isolate and dispose of factually unsupported claims . . . ."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248. A material fact is "genuine" if it "must be established by 'sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *EEOC v. Kimball Int'l, Inc.*, No. CIV 05-371-N-EJL, 2007 WL 398468, at *1 (D. Id. Feb. 1 2007).

The moving party is entitled to summary judgment if that party shows that each issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d

**MEMORANDUM DECISION AND ORDER- 8**

626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**MEMORANDUM DECISION AND ORDER- 9**

## ANALYSIS

1. <u>ADEA Claim</u>

    A. <u>At Will Employees and Public Policy Exceptions</u>

    Defendants argue that Plaintiff was an "at will" employee and could be fired with or without cause. The Court agrees the Employee Handbook is clear regarding Mousaw's employment status.  Mousaw was an "at will" employee who could be terminated at any time by Klim. He had a compensation contract, but he did not have a contract setting forth the term or length of his employment. Klim did not need to have cause to terminate an "at will" employee.  Whether or not Mousaw understood what "at will" employment meant when he received and acknowledge receiving the Employee Handbook is not determinative of his employment status.

    There are, of course, public policy concerns that create exceptions to the general rule that an "at will" employee can be terminated at any time. One such exception is terminating an employee because of his or her age.  The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "The words 'because of' mean 'by reason of: on account of.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Age discrimination claims under the Idaho Commission on Human Rights (IHRA) are governed by the same standards as ADEA claims. *See Stevenson v. Potlatch Corp.*, 674 F. Supp 1410, 1413 (D. Idaho 1987). Age discrimination can be established through either

**MEMORANDUM DECISION AND ORDER- 10**

direct or indirect evidence. *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005). Indirect evidence is evidence which "requires an additional inferential step to demonstrate discrimination." *Id.*

A burden shifting approach known as the *McDonnell Douglas*[3] test is used in cases of age discrimination involving indirect evidence. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). First, the plaintiff must establish a prima facie case of discrimination by proving he: (1) is a member of a protected class [age 40 to 70]; (2) was performing his job in a satisfactory manner; (3) was discharged; and (4) was replaced by a substantially younger employee with equal or inferior qualifications. *Id.* at 891. Once a prima facie case is established, then the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its actions. *Id.* at 889. After the defendant offers this reason, "the *McDonnell Douglas* presumption of unlawful discrimination 'simply drops out of the picture." *Id.* The burden then shifts back to the plaintiff to prove that the defendant's proffered reason is actually pretext for age discrimination through "specific, substantial evidence." *Id.* at 890.

Age discrimination cases require a heightened burden of proof in disparate treatment claims as compared to mixed motive claims under Title VII. *See Hatheway v. Bd. of Regents of Univ. of Idaho*, 310 P.3d 315, 322-23 (Id. 2013). Simply proving age "played a role" in the decision to discharge an employee is not enough. Rather, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action."

[3]411 U.S. 792 (1973).

**MEMORANDUM DECISION AND ORDER- 11**

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that mixed-motive theory applicable to Title VII claims is not available in ADEA claims).

Plaintiff cites the Court to the following statement in *Gross* at 177-78 for support there is no heightened standard:

> Hence, the burden of persuasion necessary to establish employer liability is the same in alleged mixed-motive cases as in any other ADEA disparate-treatment action. A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the "but-for" cause of the challenged employer decision. (Citations omitted.)

The Court finds Plaintiff is misapplying this statement to refute the statement ADEA cases have a heightened standard of proof. Regardless of whether you have an age discrimination case where the plaintiff is asserting age was one of the factors or the only factor for the discharge, the standard of persuasion is the same:  but-for the employee's age they would not have been discharged. This standard is the same for *all* ADEA disparate treatment claims, but this is also a "heightened standard" from the standard applied in mixed-motive Title VII discrimination cases where a plaintiff must prove the alleged discrimination was a "motivating factor" for the employment action. The "but-for" test is a higher bar of persuasion than the "motivating factor" test.

### B. Prima Facie Case Determination

Defendant argues Plaintiff cannot make a prima facie case of discrimination. The Court respectfully disagrees. "The requisite degree of proof necessary to establish a prima facie case for Title VII and ADEA claims on summary judgment is minimal and does not

**MEMORANDUM DECISION AND ORDER- 12**

even need to rise to the level of a preponderance of the evidence." *Wallis* at 889 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987). In viewing the facts in a light most favorable to Plaintiff, the Court finds Mousaw was a member of a protected class at age 66, he was performing his job in a satisfactory manner (even though there were areas his managers wanted him to work on), he was terminated and he was replaced by a substantially younger employee with equal or arguably inferior qualifications.

The Court acknowledges Klim maintains that Mousaw was not doing his job well enough to rule out the possibility he would be fired for inadequate job performance. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).  However at this stage in the litigation, there are sufficient facts to support Plaintiff's position that he was performing his job satisfactorily. Mousaw achieved annual growth in his sales, he got along great with customers, he commuted to Utah to meet the company's needs, and his reviews were generally positive.

As to the fourth element, Plaintiff has established that Archibald was substantially younger than Mousaw, Archibald's experience in marketing in this industry was none prior to being hired, and Archibald took over substantially all of Mousaw's customers including many in Idaho and Wyoming which was not included in the alleged new Utah territory but were included in Mousaw's former territory.

**MEMORANDUM DECISION AND ORDER- 13**

## C. Employer's Reason for Terminating Employee

However, a plaintiff may not defeat summary judgment merely by establishing a prima facie case. *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991). Having found Plaintiff has carried his burden on the prima facie case, the burden now shifts to Klim to offer a legitimate, nondiscriminatory reason for Mousaw's termination.  Klim offers such a reason. Klim has presented evidence to support that the termination of Mousaw was *not* because of his age but was based on a restructuring of the business as well as Summers' determination that Mousaw was no longer a good fit based on his attitude and unwillingness to use the company technology for sales.

Mousaw's two performance reviews in 2013, while containing positive comments about performance on many fronts, also corroborate concerns about Mousaw's courtesy towards Klim employees and resistance to using company technology. Klim also produced evidence of changes to Plaintiff's sales territory as part of the restructuring that resulted in the dissolution of Mousaw's existing territory. Klim also offers that it wanted its sales rep to live in Utah.


## D. Plaintiff's Burden to Establish Employer's Reasons are Pretextual

The burden now shifts back to Plaintiff to establish that the legitimate business reasons offered were pretext for the employer's termination based on age discrimination. "Once the Defendant fulfills this burden of production by offering a legitimate, nondiscriminatory reason for its employment decision, the *McDonnell Douglas*

**MEMORANDUM DECISION AND ORDER- 14**

presumption of unlawful discrimination 'simply drops out of the picture.'" *Wallis*, 26 F.3d 885, 889 (citations omitted). Plaintiff must show age was the "but-for" cause of his termination.

Plaintiff agrees he cannot restate his prima facie case to establish pretext. However, Plaintiff argues that *Wallis* held "when a plaintiff has established a prima facie inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." *Id.* citing *Sischo -Nownegajd v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991).  The Court finds Plaintiff is applying this sentence overbroadly and out of context. After citing *Sischo-Nownejah*, the *Wallis* court clarified that in response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce "specific, substantial evidence of pretext." *Wallis* at 890 (citations omitted). "In other words, the plaintiff 'must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Id.*

Plaintiff offers the following evidence in support of his pretext allegations. First, Plaintiff argues that the reason for his termination has changed from what he was told at the meeting in which he was terminated to what was included with the responses to the Idaho Human Rights Commission to what Klim is now saying is the reason for the termination.  Plaintiff argues this puts at issue what the real reason was for terminating

Mousaw. The Court finds the inconsistencies alleged are not material and do not support a finding that Mousaw was terminated because of his age.

The Court agrees with Defendants that an employer has no legal obligation to inform an "at will" employee of any, or all of, the reasons for termination. The fact that additional reasons were given for the termination when the company responded to the complaint filed with the Idaho Human Rights Commission, than during the meeting in which Mousaw was terminated, is not evidence of pretext.

The Human Resources Director, Landon, did not make the decision to terminate Mousaw. Summers made the decision to terminate Mousaw and Landon was informed by management to tell Mousaw he was being terminated as part of the restructuring and his sales territory was being dissolved. When Mousaw asked why he was being terminated, Landon told him the company was restructuring the sales team. Landon declined to give any further information to Mousaw about the reasons for his termination when Mousaw pressed for a more detailed explanation. This is not evidence of pretext, but of normal human resource practices for advising employees they have been terminated.

Moreover, the undisputed facts establish that dissolving the territory and restructuring were the reasons also given to the Idaho Human Rights Commission investigation. So there is no inconsistency with the reasons given at the time Mousaw was terminated. Klim, in response to the Idaho Human Rights Commission investigation, also said it wanted to realign sales territories to have the sales representatives live in the territories they represented.  Appendix E to Robert C. Huntley Affidavit, Dkt. 22-1, pp.

**MEMORANDUM DECISION AND ORDER- 16**

62-70. Klim provided specific information on other sales employee lay offs and realignments of territories in the response to the investigation by the Idaho Human Rights Commission. *Id.*

Second, Mousaw argues his termination was pretextal as he had no disciplinary write ups, was well-liked by his customers and most of his fellow employees. These facts are undisputed, but they do not establish pretext for age discrimination when multiple layoffs and hirings were being made to realign the sales force. At least two sales persons in their sixties were hired for new territories. Further, the records supports, and Mousaw does not dispute, that management also had concerns about his attitude and willingness to use the company's computer software. While Mousaw may personally disagree that computer ordering is the best model for sales, he was advised that his failure to use the company's technology was a problem as was his attitude in two performance reviews. Mousaw does not dispute these grounds for his termination were brought to his attention during performance reviews. Therefore, this is not evidence of pretext.

As Defendants point out, the fact that Summers both hired Mousaw for his outside sales job and made the decision to terminate his employment is additional evidence the termination was not pretext for age discrimination. The "same-actor inference" was discussed in *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996) when the court held "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur withing a short period of time, a strong inference arises there was no discriminatory action." In fact, in such a case, "only

**MEMORANDUM DECISION AND ORDER- 17**

if a plaintiff can muster the extraordinarily strong showing of discrimination" should a case go to a jury. *See Coghlan v. American Seafoods Company LLC*, 413 F.3d 1090 (9th Cir. 2005) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). In this case, Summers initially hired Mousaw and then hired or promoted him to two other positions with the company. All of these hirings were when Mousaw was over sixty. His most recent hiring was in December 2012 and Summers terminated Mousaw in December of 2013. The only conclusion to be drawn from these facts along with the "same-actor inference" is that age was not a consideration in the hiring or firing of Mousaw and cannot be used to prove pretext for discrimination.

Next, Plaintiff argues the "new" territory alleged by Klim was not a "new" territory as it remained predominately the same with Archibald servicing not only Utah clients but also clients in Montana and Wyoming after he was hired. This argument does not rebut Summers' affidavit that after determining Mousaw's territory could not be absorbed by his sales manager, Pancheri, a new Utah territory was formed in January 2014, and this is the position that was filled by a salesperson who resided in Utah.

Just because a younger employee is hired does not mean age discrimination occurred if the employer offers legitimate business reasons for the termination which includes realigning sales territories which the employer did in fact do. While there may have been some overlap between the clients of Mousaw and the new hire, that is to be expected. Whoever took the sales position which included Utah sales territory would also continue to service Klim's existing Utah customers. The record is undisputed that

**MEMORANDUM DECISION AND ORDER- 18**

Archibald also added new Utah customers that were not on Mousaw's customer list. While there is some evidence that Archibald serviced a few Idaho and Montana customers in early 2014, it is undisputed that Pancheri (not Archibald) took over the bulk of the Wyoming and most of the Idaho customers (Archibald only continued to service a few Idaho customers located near the Utah border.). Plaintiff offers no "specific" evidence of pretext for age discrimination when his former territory was dissolved and, shortly after that being too much work for Pancheri, a new Utah sales territory was established.

Finally, Plaintiff claims the requirement of a salesperson living in Utah was pretextual since he was commuting to Utah to service Utah customers and management had not complained of his commuting arrangement. Management's desire to hire a salesperson who would live in Utah does not support an inference of pretext as the existing and potential new customers for the new territory would all be in Utah.

E. Conclusion

In viewing the facts in a light most favorable to Plaintiff, the Court finds Plaintiff has failed to establish genuine issues of material fact that the offered business reasons for termination are pretext for age discrimination. Simply put, the Court finds Plaintiff has failed to carry his burden of providing "specific, substantial evidence of pretext." *Wallis* at 890. Discharging an "at will" employee is not evidence of age discrimination. Plaintiff has not rebutted the same-actor inference of no age discrimination and the Court finds no

reasonable jury could find based on the record before this Court that "but for" Mousaw's age he would not have been terminated. For this reason, there are no genuine issues of material fact that would prevent summary judgment from being granted in Defendants' favor.

2. 42 U.S.C. § 1983 Claim

Defendants moved to dismiss the civil rights claims pursuant to 42 U.S.C. § 1983 arguing the ADEA is the exclusive remedy for age discrimination claims, even claims with their source in the Constitution. *Ahlmeyer v. Nev. Sys. Of Higher Ed.*, 555 F.3d 1051, 1060-61 (9th Cir. 2009). Plaintiff did not respond to this argument in his briefing. The Court agrees that the law is well-settled and Plaintiff cannot proceed with an age discrimination claim pursuant to 42 U.S.C. § 1983. This claim is dismissed.

3. Defendant Polaris

It is undisputed that Polaris owns Teton Outfitters, LLC. It is also undisputed that Plaintiff was never an employee of Polaris. He was solely an employee of Klim. Therefore, as a matter of law, Defendant Polaris argues it should be dismissed from the case. Again, Plaintiff failed to respond to this argument in his pleading. The Court finds the summary judgment should be granted dismissing Polaris as a party as Polaris was not the employer of Mousaw and did not terminate his employment.

**MEMORANDUM DECISION AND ORDER- 20**

## ORDER

**IT IS ORDERED:**

Defendants' Motion for Summary Judgment (Dkt. 17) is **GRANTED** and this case is dismissed.

DATED:  **September 30, 2016**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER- 21**